## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO,<br>80 F Street, NW<br>Washington, DC 20001<br><br>Plaintiff,<br><br>vs.<br><br>EUGENE HUDSON, JR., an individual,<br>12723 Parkton Street<br>Fort Washington, MD 20744;<br><br>DANA DUGGINS, an individual,<br>1645 Alvord Place<br>Red Bluff, CA 96080; and<br><br>JOHN and JANE DOES 1-10,<br>all whose true names are unknown;<br><br>Defendants. | Civil Action No. _____ |

## COMPLAINT

This is an action for computer fraud and abuse, misappropriation of trade secrets, breach of fiduciary duty, conspiracy, aiding and abetting breach of fiduciary duty, and conversion in violation of federal and District of Columbia law.

## PARTIES

1.     Plaintiff American Federation of Government Employees, AFL-CIO ("AFGE") is a labor organization, headquartered at 80 F Street, NW, Washington, DC 20001.

2.     Defendant Eugene Hudson, Jr. resides in Maryland.

3.     Defendant Dana Duggins is a resident of California.

4.      On information and belief, Defendants John and Jane Does 1 through 10 (the "Doe Defendants") are individuals whose names and addresses of residences are unknown

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction because this is an action arising under the Computer Fraud and Abuse Act ("CFAA"), as amended, 18 U.S.C. § 1030, the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA"), as amended, 29 U.S.C. §§ 401, *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. § 2201, jurisdiction being conferred in accordance with 28 U.S.C. § 1331.  Jurisdiction for the claims made under District of Columbia law is conferred in accordance with the principles of supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

6.      This Court has personal jurisdiction over Defendants under D.C. Code § 13-423 because this claim for relief arises from Defendants' transaction of business in this district.

7.      Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims alleged herein occurred in this district.

## FACTS

## AFGE'S ORGANIZATIONAL STRUCTURE

8.      AFGE is a labor organization pursuant to the Federal Service Labor-Management Relations Statute representing approximately 650,000 employees of the Federal and District of Columbia government.

9.      AFGE is headquartered in the District of Columbia.  AFGE also has 12 regional District Offices, each supervised by its own elected National Vice President.  Those National Vice Presidents, along with three executive officers – the National President, the National Secretary-Treasurer, and the National Vice President for Women and Fair Practices – comprise

the policy-making body of AFGE (the "National Executive Council" or "NEC").  AFGE is also comprised of Affiliated Councils and nearly 1,100 Locals.

10.     The AFGE Constitution provides for an election, every three years, to elect its National President, National Secretary-Treasurer, and National Vice President for Women and Fair Practices ("AFGE Convention").  The AFGE Convention will next occur in August 2018.

11.     AFGE represents 650,000 bargaining unit employees, of which approximately 310,000 are dues paying members ("AFGE Members").  These dues paying members provide AFGE with, including but not limited to, their name, home address, personal email address, personal telephone number, and date of birth.

12.     AFGE maintains membership databases, including one that contains certain personally identifying information ("PII") connected to AFGE Members, including name, home address, email address, telephone number, date of birth, AFGE membership information, and what role the member has in AFGE's organization (the "Member Database").  AFGE safeguards its databases by, among other things, limiting access to the databases to role-based access, based on the principle of least access.

13.     AFGE maintains two similar PII Policies – one for Employees and one for Officers and Membership (collectively, "PII Policies").  Both policies prohibit the disclosure of PII and/or confidential information to individuals without a "need to know."

14.     AFGE maintains an Electronic Mail, Internet & Computer Usage Policy ("Computer Usage Policy"), which restricts use of AFGE computer systems to legitimate AFGE business purposes.  Though the policy permits limited personal use of the computer systems, such personal use must comply with AFGE policies.  This policy additionally prohibits using

AFGE computer systems in an inappropriate manner, including for "personal profit" or to promote in any way the candidacy of a candidate for AFGE office.

## DEFENDANTS' HISTORY WITH AFGE LEADERSHIP

15.     Between the years of 1999 and 2012, Hudson served as the National Vice President for AFGE District 12.  In 2012, Hudson was elected into the office of the National Secretary-Treasurer of AFGE.  Hudson was reelected into the office of the National Secretary-Treasurer of AFGE at the AFGE Convention in 2015.

16.     In his oath of office, Hudson swore as follows:

I, Eugene Hudson, Jr., do hereby sincerely promise and pledge my honor that I will perform the duties of my office as prescribed by the Constitution and regulations of this Federation. **I will be loyal and true to the American Federation of Government Employees, AFL-CIO**. **I will deliver to my successor in office all books, papers, and other property of this Union which may be in my possession at the close of my official term. I further agree to deliver such papers and property to the National President of the Union or his or her authorized agent upon demand.**  All this I solemnly promise.

(emphasis added).  Hudson took this oath of office in 2012 and 2015 in front of the delegation to the AFGE Convention.  Additionally, upon information and belief, Hudson took the same AFGE oath of office each time he was sworn into office, including as National Vice President of AFGE District 12.

17.     In 2001, when Hudson was serving as National Vice President, AFGE President Harnage counseled Hudson that it was unlawful to use AFGE property for campaigning purposes.

18.     In relevant part, Article X, Section 1 of the AFGE Constitution states: "It shall be the duty of the National Secretary-Treasurer to **have custody of and properly maintain the papers and other documents and effects of the National Office** . . ." (emphasis added).

19.     The National Secretary-Treasurer is authorized to access the AFGE Member Database for legitimate AFGE business purposes from his or her computer, laptop, iPad, or mobile device after authenticating to the database using AFGE-issued credentials.

20.     In addition, the National Secretary-Treasurer is authorized to access AFGE membership documents for legitimate AFGE business purposes through requests to other AFGE departments, including the Finance Department, and the Membership and Organizing Departments.  Further, the National Secretary-Treasurer is authorized to access the AFGE Member Database for legitimate AFGE business purposes by requesting assistance from an AFGE staff member.  All such access is strictly limited to purposes for the sole benefit of AFGE.

21.     In August 2016, while still serving as National Secretary-Treasurer, Hudson announced his candidacy for national office at the upcoming triennial AFGE Convention set for August 2018.

22.     Section 4(b) of the AFGE Constitution states: "No . . . resources of AFGE . . . shall be contributed or applied to promote the candidacy of any candidate in an election."

23.     AFGE's databases, including the Member Database, are AFGE resources and property.

24.     In December 2016, the National Vice President, District Three, of AFGE filed charges with the NEC against Hudson alleging that Hudson engaged in acts of misconduct in violation of the AFGE Constitution.

25.     On August 8, 2017, the NEC found that Hudson violated the AFGE Constitution by using AFGE resources or property to promote his candidacy for national office.  Ultimately, Hudson was suspended from office for the remainder of his term.

26.     In 1987, Duggins became the Vice President of AFGE Local 2452.  In 2004, Duggins became the 3rd Vice President of AFGE Council 220 – a bargaining council.  Currently, Duggins serves as the Executive Vice President of AFGE Council 220.

27.     Upon information and belief, Duggins has taken the AFGE oath of office quoted in Paragraph 16 each time she has been sworn into office.

28.     On November 13, 2017, Duggins declared her candidacy for National Secretary-Treasurer of AFGE.  Hudson and Duggins are running mates or slate mates for the elections at the AFGE Convention in August 2018.

29.     In November 2017, Hudson was temporarily reinstated as National Secretary-Treasurer of AFGE pursuant to a preliminary injunction, which was later vacated in *Hudson, Jr. v. American Federation of Government Employees*, Case No. 1:17-cv-01867-JEB (D.D.C. 2017) (*"Hudson v. AFGE"*).

30.     On or about December 1, 2017, while reinstated, Hudson sent approximately 32 campaign emails to members of the AFGE staff in the Communications Workers of America ("CWA") bargaining unit in violation of AFGE's collective bargaining agreement with the CWA.  That bargaining agreement prohibits AFGE officers or candidates from involving AFGE staff in internal AFGE politics.

31.     On January 12, 2018, AFGE prevailed in lifting the preliminary injunction in *Hudson v. AFGE*, and thus Hudson was again removed from his officer position.

32.     Hudson and Duggins have continued their campaign for National President and National Secretary-Treasurer of AFGE, respectively, in connection with the next AFGE Convention in August 2018.

## AFGE DISCOVERS THE THEFT OF ITS MEMBER DATABASE

33.      In late 2017, AFGE began receiving reports from numerous AFGE Members who had received emails, which were political in nature, from an email account seemingly tied to Hudson.[1]  These emails came from eugenein2018@gmail.com, a Gmail account via iContact.com ("iContact").  iContact is an email marketing service that builds automated, personal emails.  The iContact mailing list in question has the name "Vote Eugene 2018."

34.      Each of these iContact emails contained an "unsubscribe" feature linked in the body of the email.  Each link is unique to the recipient of the message.  Upon clicking on this unsubscribe link, recipients can navigate to an "Edit Profile" feature.

35.      The Edit Profile feature contains a view into every element of data that the iContact administrator makes visible to the subscribers.  When an iContact administrator inputs data for a particular email recipient, visibility to the subscriber is the default.  The Vote Eugene 2018 iContact data was visible to subscribers.

36.      Through the Edit Profile feature, AFGE conducted an investigation into the nature and scope of the biographical information in the possession of the iContact administrator.

37.      On information and belief, Hudson is the iContact administrator for the "Vote Eugene 2018" mailing list.  The iContact account in question uses Hudson's name, which is included on each email.  Additionally, upon investigation, the "Vote Eugene 2018" mailing list bills to a P.O. box in Hudson's place of residence, Fort Washington, Maryland.

38.      On information and belief, Duggins also sent emails to AFGE Members using the email address danad4nst@gmail.com and the same "Vote Eugene 2018" iContact mailing list.

---

[1] AFGE continues to receive similar reports to this day.

39.     Each unsubscribe link in an iContact email has a unique value, which is tied to a

unique iContact account.  AFGE investigated and discovered a shared value between the

unsubscribe links in emails sent from eugenein2018@gmail.com and those sent from

danad4nst@gmail.com.  Unsubscribe links in emails sent from both Gmail accounts led

investigators to a page tied to the "Vote Eugene 2018" iContact account, which indicates that

eugenein2018@gmail.com and danad4nst@gmail.com were tied to one unique iContact account.

40.     Accordingly, on information and belief, Hudson and Duggins have shared access

to the "Vote Eugene 2018" iContact data set.

## AFGE DETERMINES THAT DEFENDANTS STOLE THE AFGE MEMBERSHIP LIST

41.     AFGE conducted a forensic examination and has determined with a high degree

of confidence that the data fields from the "Vote Eugene 2018" iContact data set originate from

the AFGE Member Database.  AFGE's examination revealed the following:

    a.  94.50% of the data fields matched between the two data sources, including

        several idiosyncrasies from the AFGE Member Database that also appear

        in the "Vote Eugene 2018" iContact data set.

    b.  The "Title" field in the "Vote Eugene 2018" iContact data set contained

        fictitious positions, which AFGE had seeded in the Member Database for

        internal purposes.  For example, AFGE does not have an Education VP,

        but AFGE seeded this value in the Member Database.  The "Vote Eugene

        2018" iContact data set contains this value as well.

    c.  AFGE observed in the "Vote Eugene 2018" iContact data set specific

        system codes unlikely to be replicated elsewhere, including fictitious

        codes.  For example, in AFGE's Member Database, there is an "L9999"

organization code, which does not actually exist.  AFGE observed this value in the "Vote Eugene 2018" iContact data set as well.

d.  AFGE observed consistent unusual capitalization and spacing matches in data entries.  For example, an address on "Nw 21St Ave" carried forward on both data sets, where only the "N" is capitalized in "Nw" and with the "S" capitalized in "St."  AFGE observed other unusual small errors carried forward on both data sets as well, including an abbreviation of "Chesterfield" to "Chesterfld."

e.  In one particular instance, AFGE took a legitimate data record of an AFGE Member and associated that AFGE Member's legitimate data record with a test Gmail address controlled by AFGE.  The same test email address was associated with the same AFGE Member in the "Vote Eugene 2018" iContact data set, though they have no relationship to each other except in the Member Database.  On information and belief, Hudson sent an email to that test address created by AFGE asking that person, using their real name, to subscribe to Hudson's email list.

f.  Additionally, AFGE included a test profile in AFGE's Member Database using information belonging to the husband of an AFGE staff member. That person, whose only association with AFGE was through his spouse, was also included in the "Vote Eugene 2018" iContact data set.

g.  AFGE's investigation revealed that certain extremely sensitive information, such as social security numbers and financial information, were not misappropriated.

42.     An ageing analysis of the "Vote Eugene 2018" iContact data set conducted by AFGE revealed a significant overlap with the Member Database at the time Hudson was an elected officer stationed at AFGE's national headquarters in Washington, D.C., and thus could have obtained the information.

43.     On information and belief, Hudson, either on his own or with the help of Duggins and/or the Doe Defendants, stole up to 6,600 records containing PII of AFGE Members from one or more AFGE databases, including the Member Database.  Moreover, Hudson and Duggins have used those same stolen records to contact AFGE Members to promote their candidacy for office.

44.     Hudson did not have authorization to access, view, use, or take those records for any use other than for a legitimate AFGE business purpose or for any reason after his removal from office.

45.     Defendants were not authorized to take records from the AFGE Member Database or use them in connection with any election campaign or any campaign for AFGE office.

**FIRST CLAIM FOR RELIEF**
**AGAINST ALL DEFENDANTS**
**(ACCESS IN EXCESS OF AUTHORIZATION IN**
**VIOLATION OF SECTION (a)(2)(C) OF THE CFAA)**

46.     AFGE re-alleges paragraphs 1–45 as if fully set forth herein.

47.     On information and belief, without AFGE's consent, Defendants have intentionally exceeded authorized access to AFGE's protected computers and thereby stolen, retained, and abused confidential information from AFGE-owned databases, including the Member Database.

48.     Hudson and Duggins acknowledged and agreed when swearing to abide by the AFGE oath of office that their access to AFGE property did not extend beyond their time as AFGE officers.

49.     Defendants were required to abide by AFGE PII and Computer Usage policies.

50.     By exceeding authorized access to AFGE's protected computers, Defendants were able to obtain AFGE's confidential Member Database, including the PII of AFGE Members.

51.     AFGE's computers are connected to the internet and are used to contact AFGE Members throughout the United States.  Accordingly, AFGE's computers are used in or affecting interstate commerce or communication.

52.     Defendants' acts are likely to injure and, on information and belief, have caused injury to AFGE including the cost of forensic investigation, legal assistance, and notification to affected AFGE Members as a result of the theft of PII.

53.     Defendants' acts are likely to continue to injure AFGE if they are not enjoined, by necessitating additional effort and expense related to conducting the upcoming election at the AFGE Convention due to the inappropriate use of union resources to promote an election campaign.  On information and belief, this injury could cost AFGE in excess of $1,000,000.00 in damages.

54.     On information and belief, Defendants' theft and use of AFGE property have been committed deliberately and willfully, with knowledge of AFGE's exclusive ownership of its Member Database and with a bad faith intent to improperly influence the AFGE Convention.

55.     Defendants' acts constitute access to a protected computer in excess of authorization in violation of Section (a)(2)(C) of the CFAA, 18 U.S.C. § 1030.

56.     Defendants' acts greatly and irreparably damage AFGE and will continue to so damage AFGE unless restrained by this Court; wherefore, AFGE is without an adequate remedy at law.  Accordingly, AFGE is entitled to, among other things, an order enjoining and restraining Defendants from obtaining or using any AFGE property, including, but not limited to, AFGE's membership lists, as well as to compensatory damages for, among other things, AFGE's losses sustained in responding to Defendants' theft of PII, AFGE's reasonable attorneys' fees and any other remedies provided by 18 U.S.C. § 1030.

## SECOND CLAIM FOR RELIEF
## AGAINST ALL DEFENDANTS
## (ACCESS IN EXCESS OF AUTHORIZATION IN
## VIOLATION OF SECTION (a)(4) OF THE CFAA)

57.     AFGE re-alleges paragraphs 1–56 as if fully set forth herein.

58.     On information and belief, without AFGE's consent, Defendants have knowingly and with intent to defraud exceeded authorized access to AFGE's protected computers by stealing, retaining, and abusing confidential membership information from AFGE-owned databases, including the Member Database.

59.     Hudson and Duggins acknowledged and agreed when swearing to abide by the AFGE oath of office that their access to AFGE property did not extend beyond their time as AFGE officers.

60.     Defendants agreed to abide by AFGE PII and Computer Usage policies.

61.     By means of obtaining and retaining AFGE records in excess of authorization, Defendants have furthered their intent to defraud AFGE of the value of its Member Database, including by contacting AFGE Members without authorization to promote their candidacy for National President and National Secretary-Treasurer, respectively.

62. By means of such conduct, Defendants were able to obtain AFGE's confidential Member Database, including the PII of AFGE Members.

63. AFGE's computers are connected to the internet and are used to contact AFGE Members throughout the United States. Accordingly, AFGE's computers are used in or affecting interstate commerce or communication.

64. Defendants' acts are likely to injure and, on information and belief, have injured AFGE in an amount exceeding $5,000.00, including the cost of forensic investigation, legal assistance, and notification to affected AFGE Members as a result of the theft of PII.

65. Defendants' acts are likely to continue to injure AFGE if they are not enjoined, by necessitating additional effort and expense related to conducting the upcoming election at the AFGE Convention due to the inappropriate use of union resources to promote an election campaign. On information and belief, this injury could cost AFGE in excess of $1,000,000.00 in damages.

66. On information and belief, Defendants' theft and use of AFGE property have been committed deliberately and willfully, with knowledge of AFGE's exclusive ownership of its Member Database and with a bad faith intent to improperly influence the AFGE Convention.

67. Defendants' acts constitute access to a protected computer in excess of authorization in violation of Section (a)(4) of the CFAA, 18 U.S.C. § 1030.

68. Defendants' acts greatly and irreparably damage AFGE and will continue to damage AFGE unless restrained by this Court; wherefore, AFGE is without an adequate remedy at law. Accordingly, AFGE is entitled to, among other things, an order enjoining and restraining Defendants from obtaining or using any AFGE property, including, but not limited to, AFGE's membership lists, as well as to compensatory damages for, among other things, AFGE's losses

sustained in responding to Defendants' theft of PII, AFGE's reasonable attorneys' fees and any

other remedies provided by 18 U.S.C. § 1030.

**THIRD CLAIM FOR RELIEF**
**AGAINST ALL DEFENDANTS**
**(CONSPIRACY TO VIOLATE THE CFAA)**

69.     AFGE re-alleges paragraphs 1–68 as if fully set forth herein.

70.     On information and belief, Defendants agreed to violate Sections (a)(2)(C) and

(a)(4) of the CFAA by intentionally, knowingly, and with intent to defraud, stealing, retaining,

and abusing confidential membership information from AFGE-owned databases, including the

Member Database.

71.     On information and belief, Defendants either agreed to steal the records

themselves or entered into an agreement with the Doe Defendants to receive stolen records from

AFGE's database.

72.     On information and belief, in furtherance of this unlawful act, Hudson and

Duggins either stole the records themselves or received the records from the Doe Defendants,

furthering their intent to defraud AFGE of the value of its Member Database, and contacted

AFGE Members and staff without authorization in an attempt to promote their candidacy for

National President and National Secretary-Treasurer, respectively.

73.     On information and belief, Defendants Hudson and Duggins conspired to develop

a common iContact account through which they have used AFGE's stolen property to contact

AFGE Members without authorization.

74.     Defendants' acts are likely to injure and, on information and belief, have caused

economic injury to AFGE, including the cost of forensic investigation, legal assistance, and

notification to affected AFGE Members and staff as a result of the theft of PII.

75.     On information and belief, the acts committed by Defendants in furtherance of the conspiracy have been committed deliberately and willfully, with knowledge of AFGE's exclusive ownership of its Member Database and with a bad faith intent to improperly influence the election at the AFGE Convention.

76.     Defendants' acts constitute conspiracy to access to a protected computer in excess of authorization in violation of Section (b) of the CFAA, 18 U.S.C. § 1030.

77.     Defendants' acts have greatly damaged AFGE.  Accordingly, AFGE is entitled to compensatory damages for, among other things, AFGE's losses sustained in responding to the theft of PII committed in furtherance of Defendants' conspiracy, AFGE's reasonable attorneys' fees and any other remedies provided by 18 U.S.C. § 1030.

## FOURTH CLAIM FOR RELIEF
## AGAINST HUDSON
## (BREACH OF FIDUCIARY DUTY IN VIOLATION
## OF SECTION 501 OF THE LMRDA)

78.     AFGE re-alleges paragraphs 1–77 as if fully set forth herein.

79.     Hudson served as a constitutional officer of AFGE, authorized to perform the functions of secretary and treasurer of a labor organization, and thus qualified as an "officer" for purposes of the LMRDA during his time as National Secretary-Treasurer of AFGE.

80.     As an officer of a labor organization, Hudson occupied a position of trust in relation to AFGE and its members as a group.

81.     As an officer of AFGE, Hudson occupied a fiduciary relationship to the organization and its members and had a responsibility to act in utmost good faith in managing the affairs of the organization.

82.     Hudson breached his duties to the labor organization by failing to hold AFGE property solely for the benefit of the organization and its members when he used the Member Database for personal gain to promote his candidacy for National President.

83.     On information and belief, Hudson developed an iContact account through which he has used AFGE's stolen property to contact AFGE Members without authorization and in violation of his fiduciary duties to AFGE.

84.     Further, Hudson breached his duties to AFGE by sending 32 emails to bargaining unit members in violation of the collective bargaining agreement between AFGE and CWA.  In doing so, Hudson failed to use AFGE property solely for the benefit of the organization, knowingly breached AFGE's contract with CWA, and put his personal interest in conflict with the interests of the organization.

85.     Hudson's unauthorized, self-dealing actions have caused economic injury to AFGE, including the cost of forensic investigation, legal assistance, and notification to affected AFGE Members as a result of the theft of PII.

86.     On information and belief, Hudson's breach of his fiduciary duties through the inappropriate use of AFGE property has been committed deliberately and willfully, with knowledge of the duties of an officer of a labor organization, and with a bad faith intent to improperly influence the AFGE Convention.

87.     Hudson's acts constitute a violation of the fiduciary responsibilities of officers of labor organizations in violation of Section 501(a) of the LMRDA, 29 U.S.C. § 401, *et seq*.

88.     Hudson's acts have greatly damaged AFGE.  Accordingly, AFGE is entitled to compensatory and punitive damages for, among other things, AFGE's losses sustained in

responding to Hudson's theft of PII, AFGE's reasonable attorneys' fees and any other remedies

provided by 29 U.S.C. § 401, *et seq*.

## FIFTH CLAIM FOR RELIEF
## AGAINST DUGGINS AND THE DOE DEFENDANTS
## (AIDING AND ABETTING BREACH OF FIDUCIARY DUTY IN
## VIOLATION OF DISTRICT OF COLUMBIA COMMON LAW)

89.     AFGE re-alleges paragraphs 1–88 as if fully set forth herein.

90.     On information and belief, Duggins and the Doe Defendants were and are aware

of Hudson's breach of his fiduciary duty and substantially assisted or encouraged Hudson's

illegal activity.

91.     As an officer of AFGE, Hudson occupied a fiduciary relationship to the

organization and its members and had a responsibility to act in utmost good faith in managing

the affairs of the organization.

92.     Hudson breached his fiduciary duties to AFGE as set forth above.

93.     Hudson's acts constitute a violation of the fiduciary responsibilities of officers of

labor organizations in violation of Section 501(a) of the LMRDA, 29 U.S.C. § 401, *et seq*., as set

out in paragraphs 72–81.

94.     On information and belief, Duggins stole AFGE records to share with Hudson, or

Hudson and Duggins received the AFGE records with knowing assistance from the Doe

Defendants, in violation of Hudson's fiduciary duties to AFGE.

95.     On information and belief, Hudson and Duggins developed a common iContact

account through which they have used AFGE's stolen property to contact AFGE Members

without authorization and in violation of Hudson's fiduciary duties to AFGE.

96.     Defendants have caused economic injury to AFGE, including the cost of forensic investigation, legal assistance, and notification to affected AFGE Members as a result of the theft of PII.

97.     On information and belief, Defendants' acts have been committed deliberately and willfully, with knowledge of the duties of an officer of a labor organization, and with a bad faith intent to improperly influence the AFGE Convention.

98.     Duggins' and the Doe Defendants' acts constitute aiding and abetting breach of fiduciary duty in violation of District of Columbia common law.

99.     Defendants' acts have greatly damaged AFGE.  Accordingly, AFGE is entitled to compensatory damages for, among other things, AFGE's losses sustained in responding to Defendants' theft of PII, and other remedies provided by District of Columbia.

**SIXTH CLAIM FOR RELIEF**
**AGAINST ALL DEFENDANTS**
**(MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION**
**OF THE DISTRICT OF COLUMBIA UNIFORM TRADE SECRETS ACT)**

100.     AFGE re-alleges paragraphs 1–99 as if fully set forth herein.

101.     Without AFGE's consent, Defendants have acquired for their own use an AFGE trade secret.

102.     AFGE's Member Database is not generally known.  This membership information derives significant value from the fact that it is not generally known, as candidates in union elections could use this information to contact AFGE Members to push their campaigns. Pursuant to federal regulations, candidates are required to pay the cost of emailing to such membership lists.  AFGE safeguards its Member Database.  Accordingly, AFGE's Member Database is a trade secret.

103.    On information and belief, Hudson acquired this AFGE trade secret by improper means, when he stole confidential membership information from AFGE-owned databases, including the Member Database, or otherwise induced a breach of duty to maintain secrecy of this membership list.  Hudson's conduct fell below the generally accepted standards of reasonable conduct.

104.    On information and belief, Hudson, as a member of the AFGE National Executive Council, knew or had reason to know that he was acquiring a trade secret of AFGE by improper means.

105.    On information and belief, without AFGE's consent, Hudson disclosed or used AFGE's trade secret membership list after using improper means to obtain the trade secret or knew or should have known that the trade secret membership list was derived from or through a person who had utilized improper means to acquire it.

106.    On information and belief, without AFGE's consent, Duggins disclosed or used AFGE's trade secret membership list after using improper means to obtain the trade secret or knew or should have known that the trade secret membership list was derived from or through a person who had utilized improper means to acquire it.

107.    Defendants' acts are likely to injure and, on information and belief, have caused economic injury to AFGE, including the cost of forensic investigation, legal assistance, and notification to affected AFGE Members as a result of the theft of PII.

108.    Defendants' acts are likely to continue to injure AFGE if they are not enjoined, by necessitating additional effort and expense related to conducting the upcoming election at the AFGE Convention due to the inappropriate use of union resources to promote an election

campaign.  On information and belief, this injury could cost AFGE in excess of $1,000,000.00 in

damages.

109.     On information and belief, Defendants' misappropriation of AFGE's trade secret

membership list has been committed willfully and maliciously, with knowledge of AFGE's

exclusive ownership of its Member Database and with a bad faith intent to improperly influence

the AFGE Convention.

110.     Defendants' acts constitute misappropriation of trade secrets in violation of D.C.

Code § 36-401, *et seq.*

111.     Defendants' acts greatly and irreparably damage AFGE and will continue to so

damage AFGE unless restrained by this Court; wherefore, AFGE is without an adequate remedy

at law.  Accordingly, AFGE is entitled to, among other things, an order enjoining and restraining

Defendants from obtaining or using any AFGE property, including, but not limited to, the

Member Database, as well as to compensatory damages for, among other things, AFGE's losses

sustained in responding to Defendants' theft of PII, AFGE's reasonable attorneys' fees and any

other remedies provided by D.C. Code §§ 36-403 and 36-404.

**SEVENTH CLAIM FOR RELIEF**
**AGAINST ALL DEFENDANTS**
**(CONVERSION IN VIOLATION OF**
**DISTRICT OF COLUMBIA COMMON LAW)**

112.     AFGE re-alleges paragraphs 1-111 as if fully set forth herein.

113.     Without AFGE's consent, Defendants have unlawfully exercised ownership,

dominion, or control over the personal property of AFGE in denial or repudiation of AFGE's

rights thereto.

114.     Defendants' actions seriously interfere with AFGE's right to control the property

in question.  Defendants copied and stole AFGE's membership list, or induced the copying and

theft of AFGE's membership list, and used that membership list for unauthorized purposes and without AFGE's consent.

115.    On information and belief, Hudson acquired AFGE's property unlawfully when he stole confidential information from AFGE-owned databases, including the Member Database, or otherwise induced a breach of duty to maintain secrecy of this information.

116.    On information and belief, Duggins acquired AFGE's property unlawfully when she stole confidential information from AFGE-owned databases, including the Member Database, or otherwise induced a breach of duty to maintain secrecy of this information.

117.    Hudson's exercise of ownership, dominion, or control of AFGE property also violated Hudson's oath of office, in which he acknowledged and affirmed that his access to AFGE property did not extend beyond his time as an AFGE Officer.

118.    By stealing, copying, using, and abusing AFGE's Member Database, Defendants have, on information and belief, unlawfully exercised ownership, dominion, or control over AFGE's personal property.

119.    On information and belief, Defendants knew or had reason to know that they were acquiring property that belonged solely to AFGE.  By stealing, copying, using, and abusing property that belonged solely to AFGE, and attempting to influence AFGE's membership therefrom, Defendants denied or repudiated AFGE's rights to its own property and use of that property.

120.    Defendants' acts are likely to injure and, on information and belief, have caused economic injury to AFGE, including the cost of forensic investigation, legal assistance, and notification to affected AFGE Members as a result of the theft of PII.

121.    On information and belief, Defendants' conversion of AFGE's membership list has been committed deliberately, maliciously, and willfully, with knowledge of AFGE's exclusive ownership of its Member Database and with a bad faith intent to improperly influence the AFGE Convention.

122.    Defendants' acts constitute conversion in violation of District of Columbia common law.

123.    Defendants' acts have greatly damaged AFGE.  Accordingly, AFGE is entitled to compensatory damages for, among other things, AFGE's losses sustained in responding to Defendants' theft of PII, punitive damages, and other remedies provided by District of Columbia.

## PRAYER FOR RELIEF

WHEREFORE, AFGE prays that:

I.     Defendants, and all others in active concert or participation with Defendants, be permanently enjoined and restrained from obtaining or using any AFGE property, including, but not limited to, AFGE's Member Database and any membership lists in relation to their campaign for the upcoming AFGE Convention;

II.    The Court enter Judgment declaring that Hudson, Duggins, and/or the Doe Defendants have violated the CFAA, the LMRDA; the Uniform Trade Secrets Act; and the common law of the District of Columbia;

III.   Defendants, and all others in active concert or participation with Defendants, be required, jointly and severally, to:

a.     account for and pay over to AFGE any profits derived by Defendants from their acts of computer fraud and abuse, misappropriation of trade secrets, breach of fiduciary duty, and conversion in accordance with 18

U.S.C. § 1030(g), 29 U.S.C. § 501 (b), D.C. Code § 36-403, and District
of Columbia common law, and AFGE asks that this award include
punitive damages under the LMRDA and for conversion of AFGE's
property in accordance with District of Columbia common law;

b.     pay to AFGE the costs of this action, together with reasonable attorneys'
fees and disbursements, in accordance with 18 U.S.C. § 1030(g), 29
U.S.C. § 501(b), and D.C. Code § 36-404; and

c.     destroy all of the AFGE membership information in their possession.

IV.     AFGE has such other and further relief as the Court deems just and equitable.


Dated: May 25, 2018                          Respectfully submitted,

                                             By: /s/ Jacob Sommer

                                             **ZWILLGEN PLLC**
                                             Jacob Sommer (DC Bar ID No. 494112)
                                             Nury A. Siekkinen (DC Bar ID No. 1028773)
                                             Catherine Essig (DC Bar ID No. 1044789)
                                             1900 M Street NW, Suite 250
                                             Washington, DC 20036
                                             (202) 296-3585
                                             jake@zwillgen.com
                                             nury@zwillgen.com
                                             catherine@zwillgen.com